IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
      FILED

   MAR - 4 2013

CLERK, U.S. DISTRICT COURT
By _____
              Deputy
```

JERALD JEROME DORSEY,              §
                                   §
            Plaintiff,             §
                                   §
VS.                                §   NO. 4:12-CV-021-A
                                   §
FNU RELF, ET AL.,                  §
                                   §
            Defendants.            §

### MEMORANDUM OPINION
### and
### ORDER

Now before the court is the motion for summary judgment filed in the above action by defendants, United States of America ("United States"), Thomas Relf ("Relf"), and Jordan Boone ("Boone").  Plaintiff, Jerald Jerome Dorsey, filed a response, and defendants filed a reply.  The court also ordered the parties to provide supplemental briefing on the issue of whether plaintiff's claims of negligent hiring, training, and supervision were barred by the discretionary function exception to the Federal Tort Claims Act ("FTCA").  Having now considered all of the parties' filings, the entire record in this case, and the applicable legal authorities, the court concludes that the motion for summary judgment should be granted.

I.

## Plaintiff's Claims

Plaintiff, who is incarcerated at FCI-Fort Worth, instituted this action by filing his initial complaint alleging that during the time his wheelchair was being repaired, Bureau of Prisons physical therapist Linda Hemingway ("Hemingway") assigned him the wrong type of wheelchair. While using the wheelchair, plaintiff leaned forward, the chair tipped over, and plaintiff fell out and broke his leg. Plaintiff alleged that Relf and Boone failed to timely provide medical care for his injured leg. Plaintiff asserted claims against United States under the FTCA, 28 U.S.C. §§ 1346(b), 2671 et seq., for negligent medical care, negligence, negligent hiring, training, retention, and supervision, and a Bivens[1] claim against Relf, Boone, and Hemingway for violation of his Eighth Amendment rights.[2]

II.

## The Summary Judgment Motion

United States moves for summary judgment on the grounds that plaintiff cannot establish the requirements to prevail on a negligent medical care claim because plaintiff has failed to

---

[1]Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[2]On June 18, 2012, the court granted Hemingway's motion to dismiss on the grounds that she is entitled to absolute immunity from suit as a Commissioned Officer of the United States Public Health Service.

provide expert testimony in support thereof, and that he cannot establish his claim for negligent hiring, training, and supervision.  Relf and Boone move for summary judgment on the basis of qualified immunity.

III.

Facts

The facts set forth below are undisputed in the summary judgment record:

A.   Bureau of Prisons Policies Concerning Facility Count

Employees at FCI-Fort Worth conduct an institutional count of inmates five times daily on weekdays.  Counting is a vital security function within the Bureau of Prisons that ensures all prisoners are present and accounted for.  The weekday afternoon count begins at 3:45 p.m., and is conducted by correctional officers on the shift ending at 4:00 p.m.  During count, prisoners must be in their assigned rooms and are prohibited from moving about the facility.  Each unit at FCI-Fort Worth conducts its own separate count and relays the count to Control Central. If the count is correct, that unit receives a verbal approval of count.  Once all of the units at FCI-Fort Worth have called in a correct count and complete corresponding paperwork, a clear institutional count is announced.

Bureau of Prisons policy on conducting count emphasizes the

3

importance of completing count without interruption.  For
example, the policy maintains that "[s]taff must not be
distracted during the count."  App. in Supp. of Pl.'s Resp. to
Defs.' Mot. for Summ. J. ("Pl.'s App.") at 26.  The policy also
provides that "[t]here will be no inmate movement during an
official count.  The count process will not be interrupted under
any circumstances, other than by an emergency."  Id.  Once a
clear institutional count is announced, correctional officers may
allow prisoners to move about the facility.

Correctional officers are trained to assess medical
situations involving prisoners to determine if a medical
emergency exists and the appropriate course of action, including
ordering the prisoner to the medical clinic with or without a
staff member, allowing another prisoner to escort a prisoner to
the medical clinic along with staff, or calling medical personnel
to the unit to evaluate the prisoner's condition.  If a medical
issue arises during count, a correctional officer must assess the
prisoner to determine if the severity of the injury or issue
justifies interrupting count.  Correctional officers can
interrupt count for medical issues only when a prisoner has a
life-threatening or severe medical problem, where time is of the
essence.  Where the medical issue does not appear to be life-
threatening, a correctional officer may use his or her discretion

4

to determine whether to move the prisoner between the verbal count and the announcement of the clear institutional count, or may wait until after the final institutional count is cleared.

B.   May 13, 2010 Incident

Plaintiff, who was fifty-seven years old at the time of the incident at issue, is a paraplegic and has been in a wheelchair since 1965.  Plaintiff's personal wheelchair was an Invacare A4. Between November 2009 and May 13, 2010, plaintiff took his Invacare A4 wheelchair to the wheelchair repair shop at FCI-Fort Worth, but the shop did not have the appropriate replacement parts.  When plaintiff took his wheelchair to the repair shop on May 13, 2010, Hemingway assigned plaintiff a temporary replacement wheelchair, a Tracer EX 200, to use while his regular wheelchair was being repaired.  During the afternoon count of May 13, 2010, plaintiff was in his room sitting in the Tracer EX 200 wheelchair near the window.  When plaintiff leaned forward to look out the window, the wheelchair tilted and plaintiff fell to the floor.  A fellow prisoner heard plaintiff yell out and, upon learning what happened, informed correctional officers.

Relf and Boone responded to plaintiff's room, and at some point plaintiff was returned to his wheelchair.[3]  Relf squeezed

---

[3]Plaintiff contends that when Relf and Boone came into his room they picked him up and
(continued...)

plaintiff's leg but saw no bones protruding nor any swelling and concluded that the leg was likely sprained, but not broken; Boone also indicated he could not see swelling from where he was standing.[4]   Relf directed Boone to return to work.   Because Relf did not see anything about plaintiff's condition that appeared to require immediate medical attention, he made the decision that plaintiff was not experiencing a medical emergency that warranted interrupting count, and told plaintiff he could go to the medical clinic upon completion of count.   Relf and Boone left the room and did not return.

After count cleared, another prisoner pushed plaintiff to the officer's station.   Plaintiff asked Boone if he could go to the medical clinic; however, Boone told plaintiff his leg was not broken and then left the office.   Another prisoner took plaintiff to the medical clinic "between 4:30 and 5:00 [p.m.] . . . a little after count."[5]   Defs.' App. at 24.   Although plaintiff did

---

[3](...continued)
returned him to his chair.  The officers claim that plaintiff was already back in his chair when they entered the room.  It is unnecessary for the court to resolve this factual dispute, as it is immaterial to the court's resolution of plaintiff's claims.

[4]Relf and Boone dispute that they touched plaintiff in any way.  As in note 3, supra, this factual dispute is immaterial to resolution of plaintiff's claim, as plaintiff does not contend that any touching by Relf and Boone caused or exacerbated his injury.

[5]Again, the parties dispute the exact sequence of events following the completion of count and prior to plaintiff actually arriving at the medical clinic.  Accepting plaintiff's version of events, the court concludes that these factual disputes are immaterial to the resolution of plaintiff's claims.

not have his prisoner identification badge, staff at the medical services clinic recognized him so he was able to obtain treatment.[6]

Plaintiff's medical records indicate that his medical treatment started at 4:15 p.m. with an evaluation by Nurse Burns. The records reveal that when medical staff examined plaintiff, they found no bruising or swelling, plaintiff had a full range of motion, his knees appeared symmetric, and he also complained of pain.  A nurse practitioner wrapped plaintiff's knee with an ace wrap and prescribed pain medicine, and scheduled an x-ray for the next day.  The x-rays taken on May 14, 2010, revealed a fracture of plaintiff's right tibia and fibula.  Plaintiff was transported to a hospital and received a splint on his leg.  Over the next several months, plaintiff continued to be evaluated and treated for his broken leg.  On September 20, 2010, plaintiff's Invacare A4 wheelchair was returned to him.

IV.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides

---

[6]The complaint alleges that Relf denied plaintiff access to medical care because when plaintiff saw Relf at the door of the medical clinic, Relf told plaintiff to return to the unit, which plaintiff did.  At his deposition, plaintiff testified these allegations were a mistake by the prisoner who assisted him in writing the complaint, and that he did not return to the unit but was able to enter the clinic and receive medical treatment.

that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986).  The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case.  Id. at 324.  See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . .").  If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

8

475 U.S. 574, 587, 597 (1986).

V.

Analysis

A.   Claims Against United States

The FTCA provides a limited waiver of the sovereign immunity

of the United States for torts committed by federal employees

acting within the scope of their employment.   28 U.S.C. § 1346

(b); Berkovitz by Berkovitz v. United States, 486 U.S. 531, 535

(1988).   The FTCA authorizes civil actions for damages against

the United States for personal injury or death caused by a

government employee's negligence when a private individual under

the same circumstances would be liable under the substantive law

of the state in which the negligence occurred.   28 U.S.C. §§

1346(b), 2674; Hollis v. United States, 323 F.3d 330, 334 (5th

Cir. 2003).

1.   Negligent Medical Care

State law controls liability for medical malpractice under

the FTCA; because the alleged negligence here is claimed to have

occurred in Texas, Texas law applies.   Hollis, 323 F.3d at 334.

Texas law requires a plaintiff in a medical malpractice case

to prove "(1) a duty owed by the defendant to the plaintiff, (2)

a breach of that duty, (3) actual injury to [the] plaintiff, and

(4) ... [proof that] the breach [was] a proximate cause of the

9

injury." Id. at 336 (alteration in original).  In Texas, a physician or other health care provider has a duty to exercise that degree of care which a physician or other health care provider of ordinary prudence and skill would have exercised in the same or similar circumstances.  Id.; Chambers v. Conaway, 883 S.W.2d 156, 158 (Tex. 1993) (citing Hood v. Phillips, 554 S.W.2d 160, 165 (Tex. 1977)).  "The question of what a reasonable and prudent doctor would have done under the same or similar circumstances" must be determined based on expert testimony concerning the "medical standards and treatment in the particular case." Snow v. Bond, 438 S.W.2d 549, 550-51 (Tex. 1969).

A health care provider's failure to act according to the applicable standard of care constitutes a breach of that duty. Chambers, 883 S.W.2d at 158.  Unless the treatment provided is a matter of common knowledge or within a lay person's experience, expert testimony is required to prove that the acts or omissions of the health care provider fell below the applicable standard of care.  Hannah v. United States, 523 F.3d 597, 601 (5th Cir. 2008); Chambers, 883 S.W.2d at 158.  And the fact that plaintiff's claim is against a physical therapist rather than a physician does not alleviate the requirement to establish the relevant standard of care: under Texas law, "a physical therapist malpractice action is treated exactly like a traditional

physician malpractice action," thus requiring that the relevant standard of care be established by expert testimony. Flores v. Ctr. for Spinal Evaluation and Rehab., 865 S.W.2d 261, 264 (Tex. App.--Amarillo 1993, no writ).

Here, plaintiff concedes that his claim concerning Hemingway's assignment of the wheelchair fails due to lack of expert testimony. However, plaintiff contends that his claim that Hemingway failed to adequately instruct him in the use of the wheelchair survives because the need to provide instructions and warnings to a wheelchair user is a matter of common knowledge. The court disagrees. A wheelchair is a medical device. Plaintiff admitted that he had used a wheelchair for thirty-five years. Whether Hemingway, as a physical therapist, was required to provide plaintiff, a thirty-five year wheelchair user, with warnings or instructions on the use of a wheelchair is not within the common knowledge of lay persons. Instead, plaintiff was required to provide expert testimony concerning the degree of care which a physical therapist of ordinary prudence and skill would have exercised in the same or similar circumstances, whether Hemingway breached that standard of care, and whether any such breach was a proximate cause of plaintiff's injury. See e.g., Flores, 865 S.W.2d at 264; cf. Valley Baptist Med. Ctr. v. Azua, 198 S.W.3d 810, 814 (Tex. App.--Corpus Christi

2006, no pet.) (concluding that an allegation that an employee of a health care provider negligently failed to block wheels of a wheelchair while assisting the plaintiff into a wheelchair was a health care liability claim that required an expert report).[7] Plaintiff's failure to provide expert testimony warrants summary judgment on his claim of negligent medical care.

    2.   <u>Negligent Hiring, Training, Retention, and Supervision</u>

    Although the FTCA is generally a waiver of United States's sovereign immunity, the statute also carves out certain exceptions.  Relevant here is an exception for claims based on the "exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  Exceptions to the FTCA waiver of immunity must be strictly construed in favor of United States.  <u>Truman v. United States</u>, 26 F.3d 592, 594 (5th Cir. 1994).

    Courts apply a two-part test to determine whether the discretionary function exception applies to a given case, bearing in mind that "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary

---

    [7]Plaintiff quotes from the cover and certain pages of the operator and maintenance manual for the Tracer EX200 wheelchair that warn the user not to attempt to shift his or her weight or reach objects in front of him or her, and to read all instructions, and claims that Hemingway should have directed his attention to those pages.  The summary judgment record shows that the user's manual for plaintiff's Invacare A4 wheelchair includes identical instructions.

function exception applies in a given case." Berkovitz by
Berkovitz v. United States, 486 U.S. at 536 (citing United States
v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),
467 U.S. 797, 813 (1984)). First, the court must determine
"whether the action is a matter of choice for the acting
employee," meaning it must involve an element of "judgment or
choice." Id. The discretionary function exception does not
apply when a "federal statute, regulation, or policy specifically
prescribes" a course of action for the employee to follow.
United States v. Gaubert, 499 U.S. 315, 322 (1991) (emphasis
added) (citing Berkovitz by Berkovitz, 486 U.S. at 536). Second,
the court must decide if the judgment involved is "of the kind
that the discretionary function exception was designed to
shield." Id. at 322-23.

Decisions regarding hiring, supervising, training, and
retaining employees involve many public policy considerations and
matters of judgment and choice for Bureau of Prisons employees
making those decisions. Decision-making employees must evaluate
and weigh the qualifications of applicants, consider staffing
requirements, conduct an ongoing assessment of training needs,
and make numerous daily decisions regarding supervision of
employees. These "multi-factored choices require the balancing
of competing objectives, and are of the 'nature and quality that
Congress intended to shield from tort liability.'" Tonelli v.

United States, 60 F.3d 492, 496 (8th Cir. 1995) (citing Varig
Airlines, 467 U.S. at 813).

As to the second factor, courts have repeatedly held that
employment decisions, i.e., the manner in which the United States
selects, trains, and supervises its employees, are discretionary
functions that the discretionary exception is meant to shield.
See, e.g., LeRose v. United States, 285 F. App'x 93, *96-97 (4th
Cir. 2008); Nurse v. United States, 226 F.3d 996, 1001-02 (9th
Cir. 2000) (claims of "negligent and reckless employment,
supervision and training . . . fall squarely within the
discretionary function exception."); Tonelli, 60 F.3d at 496-97;
Dretar v. Smith, 752 F.2d 1015, 1017 n.2 (5th Cir. 1985)
("Supervising employees is certainly a discretionary function.").
The court finds nothing distinguishable about the instant action,
and agrees that the same result is warranted.

Plaintiff concedes that his allegations of negligent
supervision and retention are barred by the discretionary
function, but maintains that his allegation of negligent training
survives.  The basis of this argument is that Relf and Boone were
acting under mandatory, rather than discretionary, training
regulations.  Specifically, plaintiff claims that Bureau of
Prisons policies dictate the proper response to a medical
emergency; because Relf and Boone, in plaintiff's view, failed to
respond consistent with the policy, it shows they violated a

mandatory policy.

This case, however, falls squarely within the parameters of the discretionary function exception because Relf and Boone had several elements of judgment or choice.  It is undisputed that, at the time of plaintiff's accident, the afternoon count was proceeding.  Bureau of Prisons policy on conducting count provides that "[s]taff must not be distracted during the count," and that "the count process will not be interrupted under any circumstances, other than by an emergency."  Pl.'s App. at 26. Upon learning of plaintiff's accident, Relf and Boone were required to use their judgment and discretion to assess the situation and determine if a true emergency existed and how it would affect the ongoing count.  Based on their observations, they made the decision that no such emergency existed.  That the situation resulted in a more serious injury to plaintiff than either Relf or Boone was able to discern at the time is no evidence that they violated a mandatory policy or that the Bureau of Prisons negligently trained the officers.

The court thus concludes that the discretionary function exception to the FTCA bars plaintiff's claims against United States for negligent hiring, training, supervision, and retention.

3.   <u>Negligence</u>

Plaintiff also attempts to state a general negligence claim

against United States based on the alleged negligent failure to supervise the individuals working in the wheelchair repair shop. At its core, this is a restatement of plaintiff's claim of negligent failure to supervise and train, discussed supra.  The only difference is that plaintiff claims Bureau of Prisons staff negligently failed to train and supervise the prisoner-employees who worked in the wheelchair repair shop, rather than other Bureau of Prisons employees.  In the court's view, supervision and training of employees who happen to be prisoners necessarily entails the same, if not more, elements of judgment and choice involved in supervising Bureau of Prisons employees, bringing this claim within the discretionary function exception.

Further, to prove negligence in Texas requires plaintiff to show, inter alia, that a defendant's breach was the proximate cause of his injury.  Skipper v. United States, 1 F.3d 349, 352 (5th Cir. 1993) (applying Texas law).  Plaintiff has directed the court to no summary judgment evidence to show that anything done by the wheelchair shop employees or their Bureau of Prisons supervisors was a proximate cause of his injuries.  The basis of plaintiff claims is that the fall from a temporary-use wheelchair caused his broken leg; he has not alleged that the wheelchair shop employees had anything to do with the temporary-use wheelchair or that their actions resulted in his fall.

And although plaintiff contends that Relf and Boone were

16

negligent by failing to notify medical personnel when they found him on the floor in his room or by leaving him to return to finish count, he again fails to show that such acts were the proximate cause of his injury. Nor can he, as his leg was already broken by the time that Relf and Boone arrived in his room, and he has offered no summary judgment evidence that anything they did or failed to do exacerbated his injury. Plaintiff's negligence claim fails for these additional reasons.

B.   <u>Claims Against Relf and Boone</u>

Relf and Boone contend that plaintiff's claims against them should be dismissed because they are entitled to qualified immunity.  The court agrees.

Government officials are generally protected from liability for performing discretionary duties "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  When a defendant asserts an entitlement to qualified immunity, the burden is on the plaintiff to negate the defense.  <u>McClendon v. City of Columbia</u>, 305 F.3d 314, 323 (5th Cir. 2002) (per curiam).  At the summary judgment stage, "the plaintiff can no longer rest on the pleadings . . . and the court looks to the evidence before it" in

17

considering a defendant's claim to qualified immunity.  Id.
(ellipses in original).  In analyzing whether an individual
defendant is entitled to qualified immunity, the court considers
whether plaintiff has alleged any violation of a clearly
established right, and, if so, whether the individual defendant's
conduct was objectively reasonable in light of clearly
established law.  Siegert v. Gilley, 500 U.S. 226, 231-33 (1991);
see also Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir.
2005).  The court may use its discretion in deciding which of the
two prongs in the qualified immunity analysis to first consider
in light of the circumstances of a particular case. Pearson, 555
U.S. at 236.

The "unnecessary and wanton infliction of pain . . .
constitutes cruel and unusual punishment forbidden by the Eighth
Amendment." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (ellipses
in original)(internal citation and quotation marks omitted).  The
Supreme Court has determined that deliberate indifference to a
prisoner's serious medical needs may constitute the "unnecessary
and wanton infliction of pain" necessary to state an Eighth
Amendment violation.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).
However, not every claim by a prisoner that he received
inadequate medical care states an Eighth Amendment violation.
Id. at 104-105.

For a prison official's deliberate indifference to a prisoner's serious medical needs to rise to the level of a constitutional violation, a prisoner must establish that the official knew of and disregarded an excessive risk to a prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. An official's "failure to alleviate a significant risk that he should have perceived but did not" does not constitute an Eighth Amendment violation. Id. at 838. Unsuccessful medical care, negligent treatment, or medical malpractice do not rise to the level of a constitutional tort. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006).

The court concludes in the instant action that plaintiff has failed to allege the violation of a constitutional right. The sum of plaintiff's allegations against Relf and Boone is that they caused a delay in his receiving needed medical care. A delay in medical care constitutes a violation of a prisoner's Eighth Amendment rights only "if there has been deliberate indifference, which results in substantial harm." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). Plaintiff cannot make such a showing.

19

Relf and Boone went to plaintiff's cell following a report of his injury and evaluated his leg. Seeing no blood or swelling, nor anything else that caused them to believe plaintiff's leg was broken, they returned to continue the facility's afternoon count. As noted, the institutional count serves a critical security function, and Bureau of Prisons policy prohibits interrupting count or allowing movement of prisoners within the facility absent an emergency. Nothing about plaintiff's condition at the time Relf and Boone evaluated him caused them to believe an emergency existed or that immediate medical attention was warranted.

Although the exact time of injury is unknown, it occurred after the afternoon count started at 3:45 p.m. Plaintiff's medical records show he was treated at the medical clinic around 4:15 - 4:30 p.m. the same day. Even accepting plaintiff's contention that he did not arrive at the medical clinic until around 5:00 p.m., it is undisputed that he received care and treatment at that time. Plaintiff contends that Relf and Boone knew plaintiff had injured his leg, and seems to argue that this defeats the defense of qualified immunity.[8] Knowing that some

---

[8]Plaintiff cites to certain portions of defendants' appendix to support this contention. However, the referenced pages do not state that Relf and Boone knew of the injury to plaintiff's leg and fail to support plaintiff's argument. Plaintiff cites to no summary judgment evidence that shows Relf and Boone
(continued...)

injury may have occurred is not tantamount to knowledge of a broken leg, especially given the uncontroverted evidence that no blood was present and no bones were protruding from plaintiff's leg.  Stated differently, plaintiff has directed the court to no summary judgment evidence that Relf and Boone knew of, and disregarded, an excessive risk to plaintiff's health or safety. Farmer, 511 U.S. at 837.  Further, the summary judgment evidence shows that at most, perhaps seventy-five to ninety minutes elapsed between plaintiff's injury and the time he went to the medical clinic.  Plaintiff identified no summary judgment evidence to show that he suffered any "substantial harm" as a result of Relf and Boone's actions.  See Iruegas v. Poe, 374 F. App'x 513 (5th Cir. 2010) (delay in providing prisoner medical care not a constitutional violation where prisoner could not show any harm based on the delay.)

The court bears in mind that in the summary judgment context, once a defendant pleads he is entitled to qualified immunity, "the burden shifts to the plaintiff to rebut it." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007) (emphasis in original) (citation omitted).  Here, plaintiff has failed to rebut Relf and Boone's assertion of qualified immunity.

---

[8](...continued)
knew plaintiff's leg was broken and failed to act accordingly.

Considering all of the foregoing, the court concludes that Relf and Boone are entitled to qualified immunity, and that plaintiff has not carried his burden to show otherwise.[9]

### VI.

### Order

Therefore,

The court ORDERS that defendants' motion for summary judgment be, and is hereby, granted, and that all claims and causes of action asserted by plaintiff, Jerald Jerome Dorsey, against defendants, United States, Relf, and Boone, be, and are hereby, dismissed with prejudice.

SIGNED March 4, 2013.

JOHN McBRYDE
United States District Judge

---

[9]Nothing in the complaint alleges any basis for attaching liability to Relf and Boone for the original injury caused by plaintiff falling out of the wheelchair, nor for any problems or failures pertaining to the medical care plaintiff received following his initial treatment or evaluation in Health Services.